UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No.: 25-10886-JDH

| | |
|---|---|
| STOUGHTON MEDIA ACCESS CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>THE TOWN OF STOUGHTON, MASSACHUSETTS, THOMAS CALTER III, STEPHEN CAVEY, and JOSEPH MOKRISKY, in their individual and official capacities,<br><br>    Defendants | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

The Defendants, Town of Stoughton, Massachusetts, Thomas Calter III, Stephen Cavey, and Joseph Mokrisky, in their individual and official capacities, hereby respond to each numbered paragraph of the Plaintiff's Complaint as follows:

**INTRODUCTION**

1. The defendants state that this paragraph is an introductory statement and does not require an answer. To the extent that the plaintiffs make allegations of wrongdoing by the defendants, they are denied.

2. The defendants deny that their actions towards the plaintiff were ever unlawful or improper. The defendants have been concerned about the fact that SMAC has been broadcasting what can only be characterized as false propaganda that resulted in numerous complaints to the Town by outraged citizens.

1

3. The defendants admit the allegations contained in this paragraph.

## PARTIES

4. The defendants admit the allegations contained in this paragraph.

5. The defendants admit the allegations contained in this paragraph.

6. The defendants admit the allegations contained in this paragraph.

7. The defendants admit the allegations contained in this paragraph.

## JURISDICTION AND VENUE

8  The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

9  The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

## FACTUAL ALLEGATIONS

10  The defendants agree that the language in this paragraph appears in the Article 1 Preamble of the Town contract with SMAC. The defendants further state that the Town of Stoughton Xfinity Agreement states in relevant part that "the government access channel may not be used to cablecast for profit, political, or commercial fundraising programs in any fashion. "

11. The defendants agree with the description contained in this paragraph. However, the defendants further state that SMAC violated this provision by broadcasting biased and unlimited coverage for only one point of view.

12. The defendants state that the Board of Selectmen executed the agreement on August 9,2023, but the SMAC Board of Directors did not sign it until September 5, 2023.  It should be noted that SMAC operated without a contract for almost nine years prior.

13. The defendants admit the allegations contained in this paragraph and further state that the Town passes the funds to SMAC.

14. The defendants admit the allegations contained in this paragraph.

15. The defendants agree that SMAC provides PEG Access Channels to Stoughton Residents. The defendants further state that some of the content of the broadcasts is inappropriate.

16. The defendants state that the access agreement speaks for itself and further state that whether or not SMAC has operated in conformance with the agreement is the subject of much debate.

17. The defendants state that the access agreement speaks for itself. The defendants further state that the Town Manager never enforced programing content.

18. The defendants state that the Town Charter speaks for itself.

19  The defendants admit the allegations contained in this paragraph.

20. The defendants admit the allegations contained in this paragraph.

21. The defendants vehemently deny the scurrilous allegations it this paragraph.

22. The defendants agree that the Town requested records from SMAC. The defendants deny that they had no basis to request those records and further deny that the Town was on a "fishing expedition". The defendants deny the allegations contained in the final sentence of this paragraph.

23. The defendants deny that they hired counsel for any improper purpose.

24. The defendants agree that the current access agreement was reached after negotiations. The defendants further state that the liaisons could not raise issues because SMAC was not providing them with quarterly reports.

25. The defendants admit the allegations contained in this paragraph.

26. The defendants agree that Finance Director Elizabeth Zaleski reported that SMAC' Enterprise Fund was in a deficit state. The defendants deny that the report was false.

27. The defendants deny that they refused to disclose the amount in the Enterprise Fund and state that SMAC's financials were always available to SMAC.

28. The defendants state that the Town Manager is the appointing authority for the SEBC' members.

29. The defendants state that the Commonwealth of Massachusetts had guaranteed 48 million in state funding which was affirmed by a vote by Stoughton residents.

30. The defendants agree that there has been a debate among Stoughton residents regarding the school project. That debate also included issues regarding the quality of education, impact on real estate values, the cost of alternative mitigation methods, and the integrity of the "Not BQC's" data.

31. The defendants admit the allegations contained in this paragraph.

32. The defendants deny that any of them did anything improper be advocating for the school project. The defendants further deny that any representative of the Town ever pressured or coerced SMAC regarding their broadcasting choices. The Town Manager emphasized to SMAC management their duty of political neutrality and relayed citizen complaints alleging bias.

33. Prior to April 2025, Mr. Calter never attended a single SESBC meeting. He only attended the first SSIWG meeting on Monday, August 19, 2024, for the purpose of appointing a Chair and Vice Chair. He never attended another working group meeting thereafter and allowed the group to work alongside the public independently and free of political influence.

34. The defendants state that the SEBC did not establish the Working Group. The defendants further state that the SSIWG is not subject to the open meeting law and this fact has been confirmed by the Massachusetts Secretary of State.

35. Defendant Calter denies making the statements attributed to him in this paragraph.

36. SMAC employees were not invited to the first SSIWG meeting. Upon learning that SMAC departed for the meeting, Mr. Calter contacted Ms. Zulawnik to cancel the crew. SMAC is not permitted to film a working group meeting without the Town Manager's written consent. The film crew had one hour's advance notice that their services were not needed, and they never attempted to record the meeting.

37. The defendants deny that defendant Calter did not approve the recording of the meeting for the purpose of suppressing any views. Defendant Calter's primary concern was the potential discomfort of the members of SSIWG in speaking freely. His actions promoted a better debate.

38. The defendants admit the allegations in this paragraph and further state that the Town Manager's reason for not authorizing the recording of the working group meetings was to promote open discussion.

39. The defendants state that the authority regarding the recording of SSIWG meetings rests with the Town Manager, not the Selectboard.

40. The defendants state that the authority regarding the recording of SSIWG meetings rests with the Town Manager, not the Selectboard.

41. Defendant Calter did not claim that SMAC's Board of Directors made the decision to cover the SSIWG meeting. However, SMAC Board member Dave Lurie publicly stated that the SMAC Board had indeed voted to cover the meeting.

42. The defendants deny that any statement by defendant Calter was false.

43. The defendants state that Mr. Calter invited the public to attend and participate in the working group.

44. State law mandates that it is the right of the Town Manager to permit or deny any recordings.

45. The defendants agree that defendant Calter visited the SMAC studio and that he informed a SMAC board member that SMAC had no right to record the working group meetings without the Town Manager's consent.

46. The defendants deny the allegations in this paragraph. Defendant Calter never admonished SMAC's station manager.

47. The defendants agree that Chairman Cavey discussed SMAC's president and discussed with him various topics about SMAC's coverage.

48. The defendants deny the allegations in this paragraph, Mr. Cavey in no way tried to chill SMAC from anything. He simply wanted fair broadcasting.

49. The defendants deny the allegations in this paragraph.

50. The defendants state that default notice speaks for itself.

51. The defendants state that the MTC letter notice speaks for itself.

52. The defendants deny all allegations that the Notices of Default were in any way issued for a nefarious purpose. They were issued because SMAC simply because SMAC was not complying with the agreement.

53. Mr. Calter called Mr. Mullen as the President of SMAC on October 10, 2024. Mr. Calter did not "excoriate" Mr. Mullen; he simply informed him of repeated citizen complaints that flooded his office due to SMAC's imbalanced coverage.

54. On Thursday, October 10, 2024, Mr. Calter brought his concerns to Mr. Mullen's attention, citing his intimate knowledge of Commonwealth ethics laws gained from twelve years of service

in the Massachusetts House of Representatives. Not once did Mr. Calter ever threaten to initiate a formal complaint with the State Ethics Commission; he was simply passing on citizens' opinions. Mr. Calter felt that he was offering constructive advice to a colleague, which Mr. Mullen tarred with a dishonest, manipulative brush.

55. Mr. Calter never threatened Mr. Mullen with initiating an Ethics complaint. Defendant Calter was simply trying to have a constructive conversation with a colleague.

56. Defendant Calter denies that he chastised Mr. Mullen. Mr. Calter, as the Town Manager, spoke with Mr. Mullen as the Town Moderator. He expressed concern in two of Mullen's appointees to the Town Finance Committee due to their well-documented bias on the proposed school project and repeated disruptive behavior. Mr. Calter has reason to believe their appointment was an intentional choice to unfairly stoke anti-school sentiments, a suspicion confirmed by conversations with General Manager Zulawnik.

57. The defendants deny that Mr. Mokrisky ever reached out to SMAC by phone.

58. The defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

59. The defendants admit the allegation in this paragraph.

60. The defendants agree that Mr. Mokrisky visited SMAC without a prior meeting arrangement and state that he did so because that was the norm at the time. When speaking about the Logistic Park Executives video, Station Manager Zulawnik insisted upon inviting the videographer to the meeting despite his requesting otherwise. Mr. Mokriski did not berate anyone during this visit.

61. The defendants deny the allegations in this paragraph.

62. The defendants deny the allegations in this paragraph.

63. Defendant Mokrisky never accused any of SMAC's employees of malicious actions. The videographer did begin crying but then stated to Mr. Mokrisky "It's not your fault, I'm very emotional".

64. The defendants deny the allegations in this paragraph.

65. The defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

66. The defendants state that the letter speaks for itself.

67. The defendants state that the letter speaks for itself.

68. The defendants sate that the letter speaks for itself.

69. The defendants state that Defendant Cavey's social media posts speak for themselves.

70. The defendants state that Defendant Cavey's social media posts speak for themselves.

71.` The defendants deny the allegation in this paragraph.

72. The defendants agree that Mr. Calter called the General manager on January 31, 2025, in order to relate citizen complaints regarding the frequency of "no vote" programming. The GM stated that there was a new SMAC board policy. Mr. Calter asked for the policy but never received it.

73. Mr. Calter agrees that Ms. Zulawnik uncomfortably tried to explain why there was more no vote programming. However, he noted that after both sides produced their materials SMAC did not balance the programming. He offered to mutually review the programming log, but Ms. Zulawnik refused.

74. The defendants state that the Town Manager organized a Recycling Working Group and invited the SMAC general manager to attend but not to record. During these sessions Mr. Calter only commented on the topic of municipal waste management and not any other topic.

75. The defendants state that Mr. Calter's observations as to bias in programming are true and could be verified by a review of the station's log. However, SMAC has refused to provide such a log.

76. The defendants deny this allegation; Mr. Calter did not make these statements at the Recycling Group meeting.

77. The defendants deny this allegation. The only potential legal action that Mr. Calter discussed was for breach of contract by SMAC.

78. The defendants deny that Mr. Calter made these statements.

79. The defendants deny that their actions were designed to "intimidate and coerce" anyone. Mr. Calter and the Select Board maintain a respectful and appreciative relationships with SMAC employees.

80. The Town Manager never entered that SMAC General Manager's office on February 25, 2025. The only time he saw the GM was when she entered the filming studio. There was no discussion with her.

81. The defendants state that the PSA speaks for itself. The defendants contest the stations declarations of neutrality.

82. The defendants state that Chairman Covey's postings speak for themselves.

83. The defendants deny that any statements made by Chairman Covery were false and state that the communications from Chairman Covery were made to better inform the public as to the facts.

84. The defendants deny that they made any false accusations thus their statements could not have damaged SMAC's reputation.

85. The defendants state that the bylaws speak for themselves. The defendants deny that the bylaws are improper in any way.

86. The defendants deny that the bylaws will interfere with the SMAC directors performing any of their duties and exercising their fiduciary duties.

87. The defendants deny that any of the actions of the Selectboard or the Town Manager violate any laws relating to SMAC. Indeed, it has been SMAC that has violated the law, and this will be proven in Court.

## COUNT I
### RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS
(42 U.S.C. § 1983)
(Against Calter, Cavey, and Mokrisky)

88. The defendants hereby repeat their responses to Paragraphs 1 through 87.

89. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

90. The defendants deny the allegations contained in this paragraph.

91.  The defendants deny depriving SMAC of any rights.

92. The defendants deny the allegations contained in this paragraph.

93. The defendants deny the allegations contained in this paragraph.

94. The defendants deny the allegations contained in this paragraph.

WHEREFORE, the Defendants deny that the Plaintiff is entitled to judgment in any amount against them and ask this Honorable Court to enter judgment for the Defendants and against the Plaintiff, along with interest, costs, attorneys' fees and any other relief available to the fullest extent of the law.

## COUNT II
### *MONELL* FIRST AMENDMENT CLAIM
### (Against Stoughton and Calter, Cavey, and Mokrisky in their Official Capacities)

95. The defendants hereby repeat their responses to Paragraphs 1 through 94.

96. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.
.
97. The defendants deny the allegations contained in this paragraph.

98. The defendants deny the allegations contained in this paragraph.

99. The defendants deny the allegations contained in this paragraph.

100. The defendants deny the allegations contained in this paragraph.

101. The defendants deny the allegations contained in this paragraph.

102. The defendants deny the allegations contained in this paragraph.

WHEREFORE, the Defendants deny that the Plaintiff is entitled to judgment in any amount against them and ask this Honorable Court to enter judgment for the Defendants and against the Plaintiff, along with interest, costs, attorneys' fees and any other relief available to the fullest extent of the law.

## COUNT III
### MASSACHUSETTS GENERAL LAWS. c. 12, 11I -
### MASSACHUSETTS CIVIL RIGHTS ACT
### (Against Calter, Cavey, and Mokrisky)

103. The defendants hereby repeat their responses to Paragraphs 1 through 102.

104. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

105. The defendants deny the allegations contained in this paragraph.

106. The defendants deny the allegations contained in this paragraph.

107. The defendants deny the allegations contained in this paragraph.

108. The defendants deny the allegations contained in this paragraph.

109. The defendants deny the allegations contained in this paragraph.

110. The defendants deny the allegations contained in this paragraph.

WHEREFORE, the Defendants deny that the Plaintiff is entitled to judgment in any amount against them and ask this Honorable Court to enter judgment for the Defendants and against the Plaintiff, along with interest, costs, attorneys' fees and any other relief available to the fullest extent of the law.

## COUNT IV
## DEFAMATION
### (Against Calter and Cavey)

111. The defendants hereby repeat their responses to Paragraphs 1 through 110.

112. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

113. The defendants deny the allegations contained in this paragraph.

114. The defendants deny the allegations contained in this paragraph.

115. The defendants deny the allegations contained in this paragraph.

116. The defendants deny the allegations contained in this paragraph.

117. The defendants deny the allegations contained in this paragraph.

118. The defendants deny the allegations contained in this paragraph.

119. The defendants deny the allegations contained in this paragraph.

120. The defendants deny the allegations contained in this paragraph.

WHEREFORE, the Defendants deny that the Plaintiff is entitled to judgment in any amount against them and ask this Honorable Court to enter judgment for the Defendants and against the

Plaintiff, along with interest, costs, attorneys' fees and any other relief available to the fullest extent of the law.

**COUNT V**
**DECLARATORY JUDGMENT – G.L. c. 231A**
**(Against Stoughton)**

121. The defendants hereby repeat their responses to Paragraphs 1 through 120.

122. The defendants state that the bylaws speak for themselves.

123. The defendants deny the allegations contained in this paragraph.

124. The defendants deny the allegations contained in this paragraph.

125. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

126. The defendants deny the allegations contained in this paragraph.

127. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

128. The defendants state that the by laws speak for themselves.

129. The defendants deny the allegations contained in this paragraph.

130. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

131. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

132. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

133. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

WHEREFORE, the Defendants deny that the Plaintiff is entitled to judgment in any amount against them and ask this Honorable Court to enter judgment for the Defendants and against the Plaintiff, along with interest, costs, attorneys' fees and any other relief available to the fullest extent of the law.

**COUNT VI**
**BREACH OF CONTRACT**
**(Against Stoughton)**

134. The defendants hereby repeat their responses to Paragraphs 1 through 133.

135. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

136. The defendants deny the allegations contained in this paragraph.

137. The defendants deny the allegations contained in this paragraph.

WHEREFORE, the Defendants deny that the Plaintiff is entitled to judgment in any amount against them and ask this Honorable Court to enter judgment for the Defendants and against the Plaintiff, along with interest, costs, attorneys' fees and any other relief available to the fullest extent of the law.

**COUNT VII**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against Stoughton)**

139. The defendants hereby repeat their responses to Paragraphs 1 through 138.

140. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

141. The defendants deny the allegations contained in this paragraph.

142. The defendants deny the allegations contained in this paragraph.

WHEREFORE, the Defendants deny that the Plaintiff is entitled to judgment in any amount against them and ask this Honorable Court to enter judgment for the Defendants and against the Plaintiff, along with interest, costs, attorneys' fees and any other relief available to the fullest extent of the law.

## COUNT VIII
## VIOLATION OF G.L. C. 93A, §§ 2 AND 11
### (Against Stoughton)

143. The defendants hereby repeat their responses to Paragraphs 1 through 142.

144. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

145. The defendants state that this paragraph contains averments of law and, as such, does not require an answer.

146. The defendants deny the allegations contained in this paragraph.

147. The defendants deny the allegations contained in this paragraph.

148. The defendants deny the allegations contained in this paragraph.

149. The defendants deny the allegations contained in this paragraph.

150. The defendants deny the allegations contained in this paragraph.

151. The defendants deny the allegations contained in this paragraph.

WHEREFORE, the Defendants deny that the Plaintiff is entitled to judgment in any amount against them and ask this Honorable Court to enter judgment for the Defendants and against the Plaintiff, along with interest, costs, attorneys' fees and any other relief available to the fullest extent of the law.

## PRAYERS FOR RELIEF

1 – 5.   WHEREFORE, the Defendants deny that the Plaintiff is entitled to judgment in any amount against them and ask this Honorable Court to enter judgment for the Defendants and against the Plaintiff, along with interest, costs, attorneys' fees and any other relief available to the fullest extent of the law.

## AFFIRMATIVE DEFENSES

The Answering Defendants assert the following affirmative defenses while expressly reserving their right and ability to supplement these defenses at any time through trial.

### First Affirmative Defense

By way of affirmative defense, the Defendants state that they enjoy qualified immunity and therefore are immune from this suit.

### Second Affirmative Defense

By way of affirmative defense, the Defendants and their employees were privileged in conduct and acts; and, therefore, the Plaintiff cannot recover.

### Third Affirmative Defense

By way of affirmative defense, the Defendants and their employees were justified in all actors and/or conduct; and, therefore, the Plaintiff cannot recover.

### Fourth Affirmative Defense

By way of affirmative defense, the Defendants' acts and conduct were performed according to and protected by law and/or legal process, and, therefore, the Plaintiff cannot recover.

### Fifth Affirmative Defense

By way of affirmative defense, the Defendants state that the Plaintiff cannot recover because of the provisions of M.G.L. c. 258, including his failure to properly and timely present his claims as required under the Massachusetts Tort Claims Act, M.G. L. c. 258, § 4.

**Sixth Affirmative Defense**

By way of affirmative defense, the Defendants assert that the Plaintiff's Complaint must be dismissed because it is barred by the applicable statute of limitations.

**Seventh Affirmative Defense**

By way of affirmative defense, the Defendants state that they enjoyed a privilege barring the plaintiff's pending claims.

**Eighth Affirmative Defense**

By way of affirmative defense, the Defendants state that the alleged defamatory statements were fair comments.

**JURY DEMAND**

THE DEFENDANTS DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

Respectfully submitted,

The Defendants,
The Town of Stoughton, Thomas Calter III, Stephen Cavey, and Joseph Mokrisky, in their individual and official capacities,
By their attorneys,

*/s/ Leonard H. Kesten*
Leonard H. Kesten, BBO# 542042
BRODY, HARDOON, PERKINS & KESTEN, LLP
265 Franklin Street, 12th Floor Boston, MA 02110
(617) 880-7100
lkesten@bhpklaw.com

Dated: June 27, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

/s/ Leonard H. Kesten<br>
Leonard H. Kesten, BBO# 542042

Dated: June 27, 2025